UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_Jamillah C. Davis_

_____

Name(s) of Plaintiff or Plaintiffs

-vs-

_Erie County Sheriff Department_

_____

Name of Defendant or Defendants

Revised 07/07 WDN

FILED

SEP 25 2017

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

**Jury Trial Demanded**

**DISCRIMINATION COMPLAINT**

-CV-

**17 CV 955** √

You should attach a copy of your **original Equal Employment Opportunity Commission (EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision, AND** a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do so may delay your case.

***Note:*** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

X      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).
　　　　　**NOTE**: In order to bring suit in federal district court under Title VII, you **must first obtain a <u>right to sue letter</u>** from the Equal Employment Opportunity Commission.

_____      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
　　　　　**NOTE**: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first <u>file charges</u>** with the Equal Employment Opportunity Commission.

_____      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
　　　　　**NOTE:** In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a <u>right to sue letter</u>** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

_____     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1.     My address is: _78 Cedar Rd Buffalo NY 14215_

My telephone number is: _716- 390- 4169_

2.     The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

Name: _Erie County Sheriff Department_

Number of employees: _____

Address: _10 Delaware Avenue Buffalo NY 14203_

3.     (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked.  (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

Name: _____

Address: _____

## CLAIMS

4.     I was first employed by the defendant on (date): _September 12, 2016_

5.  As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
    _Oct 2016_____

6.  As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any
    did): _December 2016_____
    _____
    _____

7.  I believe that the defendant(s)

    a. _____     Are still committing these acts against me.
    b. __X__     Are not still committing these acts against me.
    (Complete this next item **only** if you checked "b" above)   The last discriminatory act
    against me occurred on (date) _March 3, 2017_____
    _____

8.  (Complete this section **only** if you filed a complaint with the New York State Division of
    Human Rights)

    The date when I filed a complaint with the New York State Division of Human Rights is

    _____
    _ (estimate the date, if necessary)

    I filed that complaint in (identify the city and state): _____
    _____

    The Complaint Number was: _____

9.  The New York State Human Rights Commission did _____ /did not _____
    issue a decision.  (**NOTE:**  If it **did** issue a decision, you **must attach** one copy of the
    decision to **each** copy of the complaint; failure to do so will delay the initiation of your
    case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the
    Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
    discriminatory conduct is: _April 17, 2017_____

11. The Equal Employment Opportunity Commission did ___did___ /did not
    _____ issue a decision.  (**NOTE:**  If it **did** issue a decision, you **must attach** one
    copy of the decision to **each** copy of the complaint; failure to do so will delay the
    initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to
    Sue letter which I received on: _June 30, 2017_____. (**NOTE:** If it

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13.     I am complaining in this action of the following types of actions by the defendants:

a.  _____  Failure to provide me with reasonable accommodations to the application process

b.  _____  Failure to employ me

c.  ___X___  Termination of my employment

d.  _____  Failure to promote me

e.  _____  Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

f.  _____  Harassment on the basis of my sex

g.  ___X___  Harassment on the basis of unequal terms and conditions of my employment

h.  ___X___  Retaliation because I complained about discrimination or harassment directed toward me

i.  _____  Retaliation because I complained about discrimination or harassment directed toward others

j.  _____  Other actions (please describe) _____
_____
_____

14.     Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

a.  ___X___  Race                    f.  _____  Sexual Harassment

b.  ___X___  Color                   g.  _____  Age
                                      _____ Date of birth

c.  _____  Sex

d.  _____  Religion                h.  _____  Disability
                                      Are you incorrectly perceived as being
                                      disabled by your employer?

e.  _____  National Origin              ____ yes ____ no

15.     I believe that I was ___was___ /was not _____ **intentionally** discriminated against by the defendant(s).

16. I believe that the defendant(s) is/are _____ is not/are not _X_ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: _____ and why the defendant(s) stopped committing these acts against you: *they terminated me on March 3, 2017* _____

17. **A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim.** (**NOTE:** You **must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit** to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
    _____ **has not** issued a Right to sue letter
    _X_ **has** issued a Right to sue letter, which I received on *June 30, 2017* _____

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

    *Journal of events attached*
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

## FOR LITIGANTS ALLEGING AGE DISCRIMINATION

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
    _____ 60 days or more have elapsed    _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on _____

22. The date on which I first asked my employer for reasonable accommodation of my disability is _____

_____

23. The reasonable accommodations for my disability (if any) that my employer provided to me are: _____
_____
_____

___

24. The reasonable accommodation provided to me by my employer were _____/were not _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: _09·25·17_        _Jamillah Davis_____

Plaintiff's Signature

MY ERIE COUNTY SHERIFF DEPUTY JOURNAL

Ms. Jamillah Davis

78 Cedar Road

Buffalo, N.Y. 14215

(716) 390-4169

I began working for the City Of Buffalo as a full time Buffalo Police Cellblock Attendant on September 17, 2012.  In September of 2016 I was offered a full time position with Erie County as a Sheriff Deputy. I accepted. I took a leave of absence.  My last day with the City of Buffalo was September 11, 2016, and my first day with the Sheriff department was September 12, 2016.  I graduated from the Sheriff Academy on December 02, 2016.  Afterwards I was assigned to several deputies to train with. On December 17, 2016 I went on my own as a Deputy Sheriff and my probationary period began.

During my training period, I immediately began to feel uncomfortable.

One morning while working a unit called Echo South with a deputy (white male) who was training me, there were several inmates on the unit who knew me.  They all at different times said hello to me.  The deputy that was training me asked how I knew them.  I explained to him two of them I went to school with and one of them was an old neighbor.  The conversation ended there.  About a week later one of my Sergeants by the name of Cathcart (black male) called me into his office.  When I got there he asked me did I work a unit that housed an Ex-boyfriend.  I told him no and explained to him how I knew the inmates. He then explained to me that someone had told him that and he told them he would look into it.  He then told me that I had done nothing wrong and the only inmates you could not work with were  family  and current or ex- lovers.  I felt confused and upset that someone would start such a terrible rumor about me, little did I know this was only the beginning.

While in my training period on an 11p-7a shift I worked with an officer (white male) on a unit out at the Alden, N.Y. facility.  About a few hours into our assignment he says to me.  "When I told deputies I was working with you tonight, they said get ready to have to do paper work as if you would get us in trouble".  You are a good worker, I'm going to make sure I tell them that".  At that moment I felt hurt, and falsely judged.

On Christmas Eve while working an 11p-7a on a unit called Gulf Northeast while doing my rounds, I noticed an inmate in his cell holding in his hand a substance that looked like marijuana. I notified my Sgt. Scanio (white male) right away.  He came to the unit and said to me " I understand you want to do the right thing, but we aren't going to deal with that tonight". " It's the holiday and I'm only filling in for someone".  I said nothing else about the incident except for the fact that I would let the next deputy coming on know, for safety reasons, because we weren't certain of what else could be in his cell.  At that moment I felt confused. I began to become unsure of what this facility expected

from me, as far as my work ethic.  When at one point I was sure I was there to always do the right thing and make safety a priority.

On January 07, 2017 we started our yearly assignment bids.  My first assignment for a year was female constant observation.  This assignment required me to watch assigned inmates up to a total of four at a time and log in a log book every 15 minutes what they were doing.  Because of it being an assignment dealing with at risk inmates I was unable to leave my post  even for a bathroom break without relief  from another deputy.  One night while working  Alpha-Long Deputy Bettinger (white female) came up and told my co-worker Deputy East (black female) who was working my regular post that night (constant observation) that she does not relieve the Constant Observation Deputy for lunch and that the Alpha-Long Deputy should.  On a later date my Co-worker Deputy East (black female), contacted Sgt. Robinson (white male) who also was our Academy Sgt. and he informed Deputy East (black female), that Deputy Bettinger (white female) had lied and it was the duty of the female escort to give lunch relief and check on breaks for the female constant observation deputy.  Sgt. Robinson (white male), addressed Deputy Bettinger (white female) about her dishonesty. When Deputy Bettinger (white female) lied about the rules for the breaks, it made me feel very uncomfortable and question whether I should trust anyone in that building.   After this incident Deputy Bettinger (white female) assumed I went to Sgt. Robinson (white male) and began targeting me in a harassing way.

In January while working a  female constant observation on Alpha- Seg with Deputy Leo (white male) as the unit deputy.  One of the forensic  inmates was having an outburst and banging loudly on her bed because she wanted her commissary which she had been promised would be given to her. While she was banging  Deputy Leo came over and started calling her "fat black bitch", and saying "look at your  rotten teeth", which only made matters worse especially since she already possessed a mental disability. I politely asked Deputy Leo (white male) not to talk to her like that in front of me because I didn't want to be a part of anything unprofessional.  He became annoyed with me and walked off.  Later that night when it was time for my lunch break Deputy Bettinger (white female) came up relieve me for my break. The forensic inmate began getting worked up again because she had not received her commissary as promised and had been calm for some time.  In an attempt to help Deputy Leo (white male) out and keep her calm, which makes the night better for both of us I went to get her commissary to give to her but was told by Deputy Bettinger (white female) to go to lunch and she can wait. I went to

lunch without passing the commissary.  When I returned from lunch Deputy Leo (white male) started using profanity at me and yelling saying, "Don't try to run my fucking unit".  He made a statement about me attempting to try to give the inmate her commissary. I tried to explain that I was only trying to help, but he was too busy yelling to hear me. Deputy Bettinger (white female) then went around the building spreading rumors that I was more for the inmates than the Deputies, which was very far from the truth. Things only got worse after this incident. I called my Sgt. Cathcart (black male) who reassured me I had done the right thing by letting it be known that I wanted no part in unprofessional behavior. After this incident I began to not just feel uncomfortable but unsafe.

One morning while in the female locker room with Deputy Johnson (black female) at the end of my overnight shift, we were having a conversation about the recent rumors about me. She was telling me that because of the rumors some thought I wouldn't protect them. I reassured her that safety is a priority to me and my loyalty was definitely to my fellow co- workers. I explained that I would never trust the inmates over my co-workers. Sgt. Weyand- Garrett (white female) who had just walked in the female locker room and had not heard the entire conversation, rudely said to me "If you can't trust you need to find another job". I did not respond to her because I felt she was being rude, harassing and unprofessional. I then turned to Deputy Johnson ( black female) and told her to have a good day grabbed my belongings and left the building to head home. I knew then that the harassment had reached a whole new level and I didn't know who to trust or go to because now management was joining in. I felt more unsafe at this point. Her statement made me feel like I was being targeted and they didn't want me there. I felt at that point my job was in jeopardy. On several occasions Sgt. Weyand – Garrett used intimidating and harassing behavior towards me. She would talk rudely to me complaining about my work when nothing was wrong . She would stand in line up on several occasions making announcements looking at me and say "if you are here more for the inmates than you are your fellow deputy I will make sure you are fired". I knew she was targeting me with that statement because of the rumors that were being spread. I felt embarrassed and wrongfully accused.

One night while working a constant observation assignment, I began to feel a lot of anxiety, because of the harassment I was experiencing. I decided I needed to talk to someone. On my lunch break I went to my Lieutenant Bryman's (white female) office but she was busy. I returned back to my post. Shortly after I received a call at my desk from Lieutenant Bryman. We talked for about three

hours. I explained to her what was going on as far as the mistreatment and rumors and how important it was to me to be a good deputy. I also told her I felt it was wrong that the harassing behavior was allowed. She told me to keep doing a good job and basically ignore it. She also made a statement that I was one of the people she was told to keep a close eye on but she believes in giving people a chance and not judging them off of another's opinion. She then went on to say after trying to encourage me to stay strong, " I have noticed over the years of me working here, around here they assume if you are female and you are black that you will be more sympathetic towards the inmates". I was completely disgusted and hurt by that belief. She said it like that was normal behavior for this building and accepted. I thanked her for her time and ended the conversation. I knew then I was not going to be protected, just expected to take the abuse. I went from feeling harassed to feeling like a victim of racism not once but twice for two things I couldn't control, being black and female. I had never experienced racism on this level. At this point I felt no matter how good of a worker I was my sex and race would be my downfall. I began to feel depressed.

One night while working a female constant observation assignment, one of my three inmates was detoxing and vomited all over the floor. I immediately contacted by phone my Sgt. Dyszynski (white female) to ask if high risk inmates were allowed to use clean up gear. She rudely replied yes. When she got to my post, I opened the door to try to encourage the sick inmate to clean her vomit the best she could. When she couldn't get up I closed the door. Sgt. Dyszynski (white female) then said "if they want to lay in there with vomit let them", she then walked away. I then opened the door a second time trying to encourage the inmate again to clean her vomit. When Sgt. Dyszynski (white female) came back around the corner and saw the door was open again, she started yelling at me rudely saying " What? Are you going to mop it up for them?". I politely said no, because her tone suggested I better not consider helping the sick inmate. I asked one of the other inmates if they could clean the mess, and they agreed. I couldn't understand why she was being so rude to me for doing the right thing, for doing my job. I was later told by another Deputy not to trust Sgt. Dyszynski because she didn't like me and didn't want me working at the Sheriff's department. I began to feel even more targeted and fearful of losing my job.

One night while working female escort I went to Sgt. Cathcart's (black male) office and told him about the work place harassment and rumors being spread about me that I had been experiencing.

He just simply encouraged me to keep doing a good job and don't worry about people's opinions. Though it sounded nice and sincere, here I was stressed, sad, and depressed, trying to work in an unhealthy environment that legally was unacceptable but at the Sheriff's department it was the norm. I felt unprotected, I felt defeated. I had no one to turn to. At this point I began to fear if I spoke up too loud the retaliation would start to get worse so I kept my mouth shut and just endured the mistreatment.

One night while I was working Alpha-Long an inmate made statements about harming herself. I reported it immediately to my supervisor who was Sgt. Lightcap (white male) that night. When he arrived he ordered me to hand over my unit equipment to another Deputy because I would be opening the constant observation room and watching that inmate all night. I did as ordered. When I went in my desk drawer to grab my bag which contained popcorn, water, and an orange, Sgt. Lightcap (white male) yelled at me in front of Deputy Bettinger (white female), Deputy Yates (white male) and another Deputy (white male) who arrived to the unit for assistance, saying "when you get a break I want you to get that shit off of the unit, you can't have that on the unit". I found it odd because at least 80% of the staff bring a bag or food to the their unit but I agreed, and followed the orders given. When Deputy Bettinger ( white female) came to relieve me for lunch she came with in hand the same thing I was told I couldn't have, a freshly popped bag of popcorn. I thought at that moment they are definitely targeting me, and treating me different from the way they treat everyone else. Here it is I just saved someone's life and instead of a compliment I get yelled at for having popcorn, that the next Deputy can bring on the unit without a care in the world. I felt mistreated, targeted and unappreciated.

One morning in March while working a 7a-3p shift on Alpha- Seg unit an inmate asked if she could talk to me. I walked over to her cell and she said " Deputy Davis, I usually don't get involved in what I hear around here but you are a good deputy. I've heard deputies on the unit saying you were going to lose your job, because you were considered too patient with the inmates". I normally wouldn't believe what she said, but I had heard that from co-workers that people felt that way. I was upset that my own co-workers would be on the unit around inmates discussing me, and that being respectful to inmates was interpreted as being too patient. I felt wrongfully judged.

One afternoon when I reported for a 3p-11p shift on the female constant observation unit a female deputy (white female ) said to me that inmates were saying they couldn't wait until I got to

work because I was respectful to them, and were saying that other deputies were not. She said it wasn't good for them to like me that much. Her exact words was "that's not a good look". I couldn't understand why inmates saying they liked when I worked because I respected them was a bad thing, when I was breaking no rules. I was confused by why she even felt the need to tell me that inmates were saying that. I began to feel that me being respectful to the inmates was a problem with someone.

On March 3, 2017 I reported to work for my 11p-7a shift, after grabbing coffee for a co-worker who was already at work on a double shift. I signed in went to my locker and put my property inside of it. I then went to the employee line up room (the inmate visiting room is used for our employee line up which starts at 10:45). While standing in the line up room waiting for the Lieutenant to come in and give the Deputies our assignments, my cell phone beeped. At that moment I realized I had accidentally forgot to put my cell phone in my locker. I immediately went to my Sgt. Cathcart (black male) who was in the room and made him aware of the situation, and asked for permission to put my phone in my locker. After given permission I immediately went to my locker room and put my phone in my locker. (Sgt. Scanio and Sgt. Forero (both white males) where standing next to Sgt. Cathcart when I came up to him to make him aware of the situation). After returning to the line up I received my assignment along with my co-workers and reported to my unit. Shortly after reporting to my unit Sgt. Cathcart ( black male) came and got me and told me I was wanted in Lieutenant Bryman's ( white female) office. Once we arrived in Lt. Bryman's (white female) office, Lt. Bryman, Sgt. Scanio (white male), and Sgt. Forero (white male) were already there. Lt. Bryman asked me "what happened?" . I explained to her that I had made an honest mistake and had forgotten to take my phone out of my pocket while at my locker. Once I realized it I immediately informed Sgt. Cathcart of my error who gave me permission to place my phone in my locker. I then expressed to Lt.Bryman it was an accident and I had no intentions of breaking the rules, but felt being honest was the best thing to do since it was not done deliberately. Lt. Bryman then said "No one is accussing you of deliberately breaking the rules". Lt. Forero then said to me " being honest was the right thing to do, but you just have to understand the culture of this place". That statement made me feel very confused and uncomfortable. I was then told by Lt. Bryman due to the phone policy I was relieved of my duties for the night. Sgt. Cathcart then walked me to my locker to get my belongings then walked me to the exit door. He then said to me " don't be too hard on yourself , it was human error. Make sure you report Monday at 9am in morning for your meeting with

Superintendent Thomas Dina and contact your union representative". I then left the building and headed home. I felt nervous scared and sad on that ride home.

That night my union representative Mark ( white male) called me to discuss the situation. He informed me that another Deputy by the name of Rita Lombardo (white female) had the same incident occur to her and with the help of the union she got her job back after being fired. He then said because of me being on probation he was not sure if the Sheriff's Department would allow him to represent me but he would be at my meeting no matter what.

On Saturday March 04, 2017, I received a call from Captain Hartman (white male) . He told me over the phone that he was on his way to my home. When he arrived he gave me a termination letter and asked for my badge and ID. I asked him if he was aware of my situation he said he didn't know the details but was ordered by upper management to draft a termination letter and pick up any department property I may have. I then explained to him what happened and he advised me to make sure I keep my meeting. He then left my home. I felt defeated, I felt hurt and depressed.

On Monday March 06, 2017, I called Superintendent Thomas Dina's office and spoke to his Secretary Hannah who told me Mr. Dina (white male) said I didn't need a meeting because I was still on probation. I insisted on having a meeting and asked if she could ask him if I could have one with a union representative present. He agreed and scheduled me for my meeting on March 07, 2017 at 9am. I thanked his secretary, asked her to thank him for his time and ended the call.

On Tuesday March 07, 2017, at 9am Superintendent Thomas Dina (white male), Deputy Superintendent Rodriguez (Hispanic male), Union representative Mark (white male) and myself met for a meeting at the Holding Center . Mr. Dina stated during the meeting as a courtesy my union representative was allowed at the meeting but could not represent me due to me being on probation when the incident occurred. He then informed me that he did not have the authority to reverse my termination. I explained to him what happened that caused the situation. I also attempted to talk about the targeting and harassment I experienced but he stopped me and said, " that's not why you were terminated". I felt whenever I tried to reach out for help I was rejected. He then said , " off the record if you want to pursue this you need to request a meeting with Under Sheriff Mark Wipperman , he has the power to reverse this decision". I thanked him for his time and the meeting ended. I left the meeting feeling sad but hopeful about a future meeting with Under Sheriff Mark Wipperman (white male).

Shortly after my meeting with the superintendent, I spoke with Sheriff liaisons  Mr. Willie Stuart (black male)  and Mr. Don Allen (black male). Both of the liaisons encouraged me to write a letter to Mr. Wipperman requesting a meeting  and another letter explaining to him how important my job with the Sheriff's department is to me. I did as told and wrote a letter to request a meeting  and mailed it. I also wrote the other letter expressing my feelings in regards to the situation. That letter was given to liaison Willie Stuart, who gave the letter to liaison  Don Allen who hand delivered the letter  to Mr. Wipperman's office. I spoke to Mr. Allen who told me Mr. Wipperman said, " I have nothing negative to say about her, I've heard nothing but good things about her, but there is a phone policy so we can't keep her". When  I heard  this I felt so hurt knowing I was being  terminated  from the career of my dreams by a man who said he had nothing negative to say about me. I had never called in, been late or had any complaints about my work I had an empty file with no write ups for discipline. I was so confused by it all. I had made an honest mistake, told the truth on my own, corrected it with permission and still lost my job. At times I felt like I didn't want to wake up. I couldn't sleep and when I did it was for short periods because my mind couldn't relax. I was so hurt. I felt mistreated. I am strong but in that moment I felt so weak. Though under a lot of stress I knew my two children and mother depended on me so I pulled myself together the best I could and decided at that point I should return to my old  job, and seek legal counsel which I did.

On Friday March 10, I contacted Buffalo Police  Human Resources to lift my leave of absence. I returned to work at Buffalo Police Cellblock on Monday March 13, 2017, where I currently work.

I have not received a response to my letter requesting  a meeting with Under Sheriff Mark Wipperman.

The incidents that I have experienced before and after my termination from the Erie County Sheriff's Department have affected me so much. I started professional counseling to help me cope with this traumatic  experience on Monday March 20, 2017. I have been told by a professional counselor I have severe depression and anxiety.

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Jamillah C. Davis
78 Cedar Road
Buffalo, NY 14215

From: Buffalo Local Office
6 Fountain Plaza
Suite 350
Buffalo, NY 14202

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2017-00423 | Jean E. Mulligan, Investigator | (716) 551-4443 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_John E. Thompson_

John E. Thompson,
Local Office Director

JUN 2 7 2017

(Date Mailed)

Enclosures(s)

cc: **Michelle Parker, Esq.**
**First Assistant County Attorney**
**COUNTY OF ERIE**
**Department of Law**
**95 Franklin Street   Rm. 1634**
**Buffalo, NY 14202**

Enclosure with EEOC
Form 161 (11/16)

# Information Related to Filing Suit
# Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**Private Suit Rights   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**Private Suit Rights   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**Attorney Representation   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**Attorney Referral and EEOC Assistance   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

***If you file suit, please send a copy of your court complaint to this office.***

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY  14202
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Buffalo Status Line: (866) 408-8075
Buffalo Direct Dial: (716) 551-4442
TTY (716) 551-5923

John E. Thompson, Jr.
Director

Jamillah Davis
78 Cedar Road
Buffalo, NY  14215

Re:    *Davis v. Erie County Sheriff's Department*
       EEOC Charge No. 525-2017-00423

Dear Ms. Davis:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on an allocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information submitted. In your charge, you alleged that you were discriminated against by Erie County ("Respondent") because of race (African-American) and sex (female) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, you alleged that you were denied equal terms, conditions and privileges of employment afforded males and non-Black employees.  You further alleged that Respondent terminated your employment in retaliation for complaining about the treatment you received.

Based upon the information provided, the Commission is unable to conclude that further investigation would likely result in the finding of a violation of the laws we enforce.  This does not certify that Respondent is in compliance with Title VII.  No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission has concluded the processing of this charge. Included with this letter is the "Notice of Dismissal and Right to Sue".  Following this dismissal, you may only pursue this matter by filing suit against the Respondent within 90 days of receipt of this notice.  Otherwise, your right to sue will be lost. Please contact Investigator Jean Mulligan at (716) 551-4443, if you have any questions.

Sincerely,                                              Date: JUN 2 7 2017

_____for
John E. Thompson, Jr.
Director

Enc.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 525-2017-00423 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Jamillah C. Davis | (716) 390-4169 | |

Street Address                    City, State and ZIP Code
78 Cedar Road, Buffalo, NY 14215

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ERIE COUNTY SHERIFF'S DEPARTMENT | 500 or More | (716) 858-7618 |

Street Address                    City, State and ZIP Code
10 Delaware Ave, Buffalo, NY 14202

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest  09-12-2016    Latest  03-04-2017

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a Black (African-American) female. Because of this I believe that I have been discriminated against.

I began my employment with the above-named department on September 12, 2016 as a Sheriff's Deputy. I was one of only 2 Black females in my academy class.

Since the start of my employment and continuing, I was subject to harassment and scrutiny that other non-Black and male employees were not subjected to. For example, comments were made about the fact that I wear my hair "natural"; one officer stated that she had "heard about me", even though I only recently began with the department.

RECEIVED
APR 1 7 2017
E.E.O.C. BULO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements *** |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X   *[signature]* Jamillah Davis 04-17-17   Date    Charging Party Signature | X   *[signature]* Jamillah Davis SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 04/17/17   *[signature]* Maureen Oakley |

MAUREEN A OAKLEY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires  5/13/2019

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 525-2017-00423 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

During my employment, I complained about the treatment I was receiving to Lieutenant Bryman. Based on her statements in response to recounting my experiences on this job, I believe that the treatment I received was due to the fact that I am a Black female.

On March 3, 2017, I reported to work for my scheduled shift and mistakenly forgot to put my cell phone in my locker. When I discovered the error during line-up, I alerted the commanding officer and was given permission to immediately place the cell phone in my locker.

On March 4, 2017, I was informed that my employment was terminated for violation of policy in connection with having my cell phone on March 3, 2017.

Upon information and belief, other male and non-Black Sheriff's Deputies have violated policy and have not been terminated.

Based on the above, I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964 and other applicable Federal, state and local anti-discrimination statutes. I further believe that I have been retaliated against in violation of these statutes.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br>*** |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| X | X |
| _____ Date        _____ Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.