UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMILLAH C. DAVIS,                       17-CV-955-LJV-MJR
                                                        REPORT AND RECOMMENDATION
               Plaintiff,

-v-

ERIE COUNTY SHERIFF DEPARTMENT,

               Defendant.
_____

This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 4). Presently before the Court is defendant Erie County Sheriff Department's motion for judgment on the pleadings against *pro se* plaintiff Jamillah Davis. (Dkt. No. 3). The Court heard oral argument on the motion on January 8, 2018.

## **BACKGROUND**

Davis commenced this action in 2017 alleging race, color, and sex discrimination against her former employer, the Erie County Sheriff Department (the "County"). (*See* Dkt. No. 1). Davis' complaint consists of a *pro se* employment discrimination complaint form, a nine page "journal of events," the administrative charge she filed with the Equal Employment Opportunity Commission ("EEOC"), and the "right to sue" letter she received from the EEOC. (*See id.*).

Davis alleges in her complaint that she began working as a deputy sheriff for the County in September 2016. (*Id.* at 8).[1] She graduated from the County Sheriff's Academy on December 2, 2016, at which time she was assigned to train at the County Jail. (*Id.*).

---

[1]      Page number citations for docketed items refer to the page number(s) assigned by CM/ECF.

It is unclear as to whether Davis worked at the Erie County Holding Center or the Erie County Correctional Facility, so the Court will simply refer to her workplace as "the Jail." Davis was the subject of two rumors during her training period. In particular, one of Davis' superiors, Sergeant Cathcart, called Davis into his office and asked her about a rumor that Davis used to date one of the inmates incarcerated at the Jail. (*Id.*). Davis denied the rumor, explaining that she went to school with some of the inmates, one of whom used to be her neighbor. (*Id.*). The second rumor concerned whether or not Davis is a poor worker. (*Id.*). Davis completed her training and began her probationary period at the Jail on December 17, 2016. (*Id.*). Davis alleges that she was harassed throughout her probationary period. The harassment can be summarized as follows.

On January 7, 2017, Deputy Bettinger, a white female officer, lied about the rules for taking breaks at the Jail. (*Id.* at 9). One of Davis' co-workers reported Deputy Bettinger's false statement, but Deputy Bettinger incorrectly believed that it was Davis who had reported her. (*Id.*). Deputy Bettinger began targeting and harassing Davis because of this misunderstanding. (*Id.*).

Also in January 2017, Davis and another deputy sheriff, Deputy Leo, observed an inmate have an outburst over a meal, leading Deputy Leo to call the inmate a "fat black bitch." (*Id.*). Davis then attempted to give the inmate her meal, but Deputy Bettinger intervened and instructed her not to. (*Id.*). On account of this incident, Deputy Bettinger spread a rumor at the Jail that Davis "was more for the inmates than the Deputies." (*Id.* at 10). The rumor reached one of Davis' superiors, Sergeant Weyand-Garrett, who announced on several occasions that she would fire anyone who is "more for the inmates than [their] fellow deputy." (*Id.*).

On an unspecified date, Davis observed an inmate vomit on the floor.  (*Id.* at 11).  Davis encouraged the inmate to clean up, but Sergeant Dyszynski intervened and told Davis to let the inmate "lay in there with [the] vomit."  (*Id.*).  After Davis again encouraged the inmate to clean up, Sergeant Dyszynski yelled at Davis.  (*Id.*).  Another deputy sheriff later told Davis that Sergeant Dyszynski does not want Davis working at the Jail.  (*Id.*).

On another occasion, Sergeant Lightcap scolded Davis for having food and drink with her during her shift even though "at least 80% of the staff bring a bag or food to their unit."  (*Id.* at 12).  Davis notes that on the same day Sergeant Lightcap scolded her for having food on her shift, Deputy Bettinger was not reprimanded even though she too brought food onto her shift.  (*Id.*).

Davis paid separate visits to Lieutenant Bryman and Sergeant Cathcart to discuss the harassment she experienced at the Jail.  (*Id.* at 10-12).  Lieutenant Bryman informed Davis that Jail personnel "assume [that] if you are female and you are black that you will be more sympathetic towards the inmates," and that she had been directed "to keep a close eye on" Davis.  (*Id.* at 11).  Sergeant Cathcart simply encouraged Davis to keep doing a good job and not to worry about other people's opinions.  (*Id.* at 11-12).  Davis' conversations with Lieutenant Bryman and Sergeant Cathcart led her to believe that the County would not protect her, so she decided to stay quiet and continue to endure the harassment.  (*Id.* at 12).

The incident that led to Davis' termination occurred on the evening of Friday March 3, 2017.  (*Id.* at 13).  While standing in the line-up room waiting to receive her assignment for the day, Davis' cell phone "beeped."  (*Id.*).  Davis immediately realized that she forgot to put her phone away, so she asked for and received permission from Sergeant Cathcart

to store it in her locker.  (*Id.*).  Davis placed her phone in her locker and reported to her assigned unit, but Sergeant Cathcart soon approached Davis and directed her to go visit Lieutenant Bryman.  (*Id.*).  When Davis arrived at Lieutenant Bryman's office, Lieutenant Bryman, Sergeant Scanio, and Sergeant Forero were there waiting for her.  (*Id.*).  Lieutenant Bryman asked Davis about her phone, and Davis explained that she forgot to put it away before her shift.  (*Id.*).  Lieutenant Bryman then relieved Davis of her duties for the night pursuant to the Department's "phone policy."  (*Id.*).  Sergeant Cathcart escorted Davis out of the Jail, telling her that she should contact her union representative and report back Monday morning for a meeting with Superintendent Thomas Dina.  (*Id.* at 13-14).  After Davis returned home from the Jail, her union representative, "Mark," called her to say he would attend the meeting with her on Monday morning.  (*Id.* at 14).  Mark also informed Davis that Rita Lombardo, a white female deputy sheriff, "had the same incident occur to her," but "got her job back after being fired."  (*Id.*).

The next day, Saturday March 4, Captain Hartman visited Davis at her home and handed her a termination letter.  (*Id.*).  Captain Hartman informed Davis that "upper management" had directed him to draft the letter and deliver it to Davis.  (*Id.*).

On Monday March 6, Davis called Superintendent Dina regarding the scheduled meeting, but Dina's secretary advised Davis that she "didn't need a meeting because [she] was still on probation."  (*Id.*).  After Davis insisted on meeting with Dina, Dina agreed to meet the following morning, at which time he informed Davis that he lacked the authority to reverse her termination.  (*Id.*).  Davis tried to tell Dina about the "targeting and harassment" she experienced at the Jail, but Dina interrupted by stating, "that's not why you were terminated."  (*Id.*).  Dina closed the meeting by telling Davis, "off the record[,] if

you want to pursue this you need to request a meeting with Under Sheriff Mark Wipperman, he has the power to reverse this decision." (*Id.*).

Shortly after meeting with Dina, Davis spoke with two Sheriff's Department liaisons, Willie Stuart and Don Allen, both of whom encouraged Davis to write letters to Wipperman requesting a meeting and explaining how much she values being a deputy sheriff. (*Id.* at 15). Davis followed their advice and wrote Wipperman two letters, one of which Allen delivered to Wipperman's office. (*Id.*). Upon receiving the letter, Wipperman told Allen that although Davis is a good worker, he could not reinstate her to her position because she had violated the phone policy. (*Id.*). Having failed to reverse her termination, Davis returned to her previous job as a cell block attendant for the City of Buffalo. (*Id.*).

After exhausting her administrative remedies before the EEOC, Davis filed the instant action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, alleging claims for discriminatory discharge, hostile work environment, and retaliation based upon race, color, and sex.[2] (*Id.* at 4). In lieu of answering Davis' complaint, the County moved for judgment on the pleadings on two grounds: first, that Davis' complaint contains only vague and conclusory allegations of discrimination, and second, that the named defendant — the Erie County Sheriff Department — is not a legal entity capable of being sued. (*See* Dkt. No. 3-2 (Memorandum of Law)). The Court set a briefing schedule on the County's motion, but Davis did not file any opposition papers.

---

[2] Although Davis alleged sex discrimination in her EEOC charge (*see* Dkt. No. 1 at 19), she did not check the sex discrimination box on her form complaint (*id.* at 4). However, at oral argument, Davis reported that she inadvertently failed to check the sex discrimination box, and she confirmed that she is in fact pursuing sex discrimination claims in this action. Given that (1) Davis is *pro se*, (2) her complaint contains factual allegations supporting sex discrimination, and (3) the County acknowledges in its motion papers that Davis is pursuing sex discrimination claims (*see* Dkt. No. 3-1 ¶4), the Court construes Davis' complaint as alleging discrimination based upon sex as well as race and color.

Davis did, however, appear for oral argument on the County's motion, at which time she presented arguments in opposition to the motion.[3]

## DISCUSSION

A party may not move for judgment on the pleadings until the pleadings are closed. *See* Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming, as is the case here, that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Here, the pleadings are not closed because the County moved for judgment on the pleadings before answering the complaint. The Court will thus construe the County's motion as a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See Bowman v. District of Columbia*, 562 F. Supp. 2d 30, 32 (D.D.C. 2008) ("If a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6).").

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] Among other things, Davis argued that she recently received a threatening, anonymous letter, possibly sent by someone at the Jail, which she believes further supports her discrimination claims against the County.

- 6 -

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Davis' complaint alleges three causes of action — discriminatory discharge, hostile work environment, and retaliation. The Court will address each claim below.

I. <u>*Discriminatory Discharge*</u>

To defeat a motion to dismiss a Title VII discrimination claim, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). The plaintiff "need only plausibly allege facts that provide 'at least minimal support for the proposition that [his employer] was motivated by discriminatory intent.'" *Id.* at 86-87 (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)). An inference of discriminatory

- 7 -

intent may arise from disparate treatment, remarks that could be viewed as reflecting discriminatory animus, or other allegations from which an improper motive may be inferred.  *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

Davis has plausibly alleged that her race, color, and sex motivated the County's decision to terminate her employment.  In particular, Davis alleges that a white female deputy sheriff by the name of Rita Lombardo kept her job even though, like Davis, she violated the phone policy.  Davis further alleges upon information and belief that male, non-black deputy sheriffs escaped termination despite having violated departmental policies.  (Dkt. No. 1 at 20).  In addition to disparate treatment, Davis alleges discriminatory remarks, including Lieutenant Bryman's comment that black female deputy sheriffs are perceived as being too kind to the inmates.  Combined with Sergeant Weyand-Garrett's statements that she would fire anyone who is "more for the inmates than [their] fellow deputy," Lieutenant Bryman's comment suggests that Davis' termination resulted from the fact she is black and female.  Based on these allegations, Davis' discriminatory discharge claim should survive dismissal.

## II.     *Hostile Work Environment*

To state a hostile work environment claim under Title VII, "a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) 'is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected characteristics].'"  *Patane*, 508 F.3d at 113 (first alteration in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).  "[A] work environment's hostility

should be assessed based on the 'totality of the circumstances.'" *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Courts consider the following factors in evaluating the totality of the circumstances: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

The harassment Davis complains of may reasonably be viewed as hostile and abusive. Within weeks of beginning work at the Jail, Davis' co-workers began spreading rumors that she had a romantic relationship with an inmate, is not a good worker, and was "more for the inmates" than her fellow deputy sheriffs. Davis' superiors took notice of the rumors — Sergeant Weyand-Garrett announced on several occasions that she would fire deputy sheriffs who are "more for the inmates," while Lieutenant Bryman told Davis that she was directed to keep a "close eye" on Davis. Another Sergeant, Sergeant Dyszynski, berated Davis for helping an inmate. A third Sergeant, Sergeant Lightcap, admonished Davis for having food and drink with her but failed to take action against a white deputy sheriff who did the same thing. In addition, Deputy Leo called an inmate "a fat black bitch" in front of Davis. The alleged harassment Davis complains of was not only objectively severe and pervasive, but also subjectively severe and pervasive, as it gave Davis anxiety and depression. (Dkt. No. 1 at 15). Indeed, Davis received mental health counseling upon her termination from the County. (*Id.*).

Davis has also pleaded facts from which the Court may infer that she was harassed because of her race, color, and sex. Although much of the verbal abuse Davis complains of does not specifically reference her race, color, or sex, a plaintiff is not required to plead

derogatory language directed at her race, color, or sex, nor is she required "to append to each allegation of harassment the conclusory declaration 'and this was done because of my [protected characteristics].'"  *Gregory*, 243 F.3d at 694-95.  "Instead, what is needed is the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her [protected characteristics]."  *Id.* at 694.  Such an inference arises here based upon Davis' allegations that she was harassed because of the misperception at the Jail that black female deputy sheriffs such as herself are too kind to the inmates.  Therefore, based on these allegations, Davis has adequately pleaded a hostile work environment claim against the County.

    III.    *Retaliation*

For a Title VII retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that:  (1) [the employer] discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. §2000e-3(a)).  "Unlike Title VII discrimination claims . . ., the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.  It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Id.* at 90-91 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

Here, although Davis alleges that she engaged in protected activity by complaining about the harassment to Sergeant Cathcart and Lieutenant Bryman, she has not plausibly alleged that the County fired her because of these complaints.  Davis has not, for example, alleged that she was terminated shortly after she lodged the complaints, as she has failed to state exactly when she complained to Lieutenant Bryman and Sergeant

Cathcart. Nor has Davis alleged any other facts from which the Court may infer that she would not have been terminated but for her complaints. Davis may, however, be able to cure this defect through better pleading. Therefore, Davis' retaliation claim should be dismissed without prejudice to the filing of an amended complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that the Court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

### IV.    *Substituting the County of Erie as Defendant*

The County (sued as the Erie County Sheriff Department) argues that the Sheriff's Department is merely an administrative unit of the County of Erie, not a separate legal entity capable of being sued individually. (Dkt. No. 3-2 (Memorandum of Law) at 2). The County is correct, *see Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990), but rather than dismiss Davis' complaint on this basis, it is recommended that the County of Erie simply be substituted as defendant in place of the Erie County Sheriff Department, *see St. John Rennalls v. Cty. of Westchester*, 159 F.R.D. 418, 419 n.1 (S.D.N.Y. 1994) (substituting the real party in interest, the County of Westchester, for the originally named defendant, the Westchester County Jail).

### **CONCLUSION**

For the foregoing reasons, it is recommended that the County's motion for judgment on the pleadings (Dkt. No. 3), construed as a motion to dismiss for failure to state a claim, be granted in part and denied in part as follows: Davis' discriminatory discharge and hostile work environment claims should go forward as currently pled,

Davis' retaliation claim should be dismissed without prejudice to the filing of an amended complaint, and the County of Erie should be substituted as defendant in place of the Erie County Sheriff Department.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED**.

Dated:   January 23, 2018
         Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge